91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terri MARTIN, on Behalf of Tameka MARTIN, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-1906.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: GUY, RYAN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Tameka Martin, is a minor child. Her mother, Terri Martin, on her behalf, filed an application for supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 301 et seq. Benefits were denied at the administrative level by an administrative law judge (ALJ), and claimant appealed to the district court. The district judge referred this matter to a magistrate judge for a report and recommendation. The magistrate judge concluded that substantial evidence supported the denial of benefits. The district judge, after considering de novo the objections filed by the claimant to the report and recommendation of the magistrate judge, also concluded that substantial evidence supported the ALJ's decision.
 
 
 2
 Our independent review of the record convinces us that, as the district court concluded, substantial evidence does exist to support the ALJ's determination, and we affirm.
 
 I.
 
 3
 On November 3, 1992, Terri Martin filed an application for supplemental security income on behalf of her daughter, Tameka, alleging that due to asthma Tameka had been disabled since birth. The facts surrounding this claim and Tameka's medical history are fully set forth in the report and recommendation of the magistrate judge, and are not in dispute here. Since nothing would be served by repeating this lengthy recitation, we proceed directly to discuss the legal issues involved in this appeal. Claimant argues that the ALJ's finding that Tameka's impairments did not meet or equal an impairment in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1 (1995), is in error. Claimant also argues that she is disabled because her impairments were of comparable severity to an impairment that would have disabled an adult, and the ALJ's conclusion to the contrary is not supported by substantial evidence. We will address both of these issues.
 
 II.
 
 4
 Substantial Evidence Supports The ALJ's Determination That Tameka Did Not Have An Impairment Or Combination Of Impairments That Met The Listing Of Impairments For Asthma
 
 
 5
 When a minor child is the claimant, the applicable regulations direct a four-step sequential analysis:
 
 
 6
 At step one, a child will be found not disabled if she is engaging in substantial gainful activity. 20 C.F.R. § 416.924(c) (1995).
 
 
 7
 At step two a child will be found not disabled if she does not have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(d) (1995).
 
 
 8
 At step three, a child will be found disabled if she has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, pt. B (1995). 20 C.F.R. § 416.924(e) (1995).
 
 
 9
 At step four, a child will be found disabled if she has a severe impairment or combination of impairments that does not meet or equal a listed impairment, if an Individualized Functional Assessment (IFA) indicates an impairment(s) of comparable severity to one that would prevent an adult from engaging in substantial gainful activity. 20 C.F.R. § 416.924(f) (1995). However, a child will be found not disabled if her IFA demonstrates that her impairments are not of comparable severity to those that would disable an adult. Id.
 
 
 10
 Since Tameka was only eight years old at the time the ALJ issued his opinion, step one of the sequential analysis is not implicated. At step two, the ALJ found that Tameka's asthma and her mild learning disability did result in a severe impairment. Accordingly, the ALJ proceeded to step three. At step three, the ALJ concluded that Tameka did not have an impairment or combination of impairments that met or medically equaled an impairment in the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (1995).
 
 
 11
 It is claimant's contention that she met the requirements of Listing 103.03B. In order to meet the requirements of this listing, a child claimant must show:
 
 
 12
 Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks[.]
 
 Listing 3.00C. defines asthma attacks as:
 
 13
 prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.
 
 
 14
 It is claimant's contention that she met Listing 103.03B because her asthma "attacks" required physician intervention twelve times during the period running from March 1993 through March 1994.
 
 
 15
 A good portion of both claimant's and the Commissioner's brief on appeal is devoted to analyzing and characterizing the nature of claimant's visits to the emergency room during this twelve-month period. As would be expected, claimant argues that her visits to the hospital satisfied both the durational and the intensive treatment requirements of the Listing of Impairments. The government argues that for the most part these hospital visits either followed a period of time in which claimant did not take her prescribed medication or did not meet the durational or intensive treatment requirement of the regulations. We find it unnecessary to review each of these visits because we concur with the analysis of Judge Woods, and adopt his findings on that issue set forth below as our own:
 
 
 16
 Plaintiff asserts that she had to visit the hospital twelve times within twelve months due to asthma attacks. The record, however, reveals that plaintiff went to a hospital eleven times between April 28, 1993, and March 16, 1994, for treatment for her asthma condition. Specifically, plaintiff visited the hospital on: April 28, 1993 (T. 250-53); May 9, 1993 (T. 259-275); May 11 and May 12, 1993 (T. 276-87); July 13, 1993 (T. 288-291); July 30, 1993 (T. 292); August 22, 1993 (T. 298-300); October 1, 1993 (T. 293-97; February 21, 1994 (T. 353-59); March 11, 1994 (T. 360-64); and March 16, 1994 (T. 365-69). More importantly, plaintiff did not receive "intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy," on at least seven of those visits. In particular, on April 28, 1993, the hospital released plaintiff after she received 5 m.g. of albuterol (T. 252). On July 13, 1993, the hospital released plaintiff within two hours after she received 2.5 m.g. of albuterol (T. 291). On July 30, 1993, the hospital released plaintiff within two hours after she received an aerosol treatment of ventolin (T. 292). On August 22, 1993, the hospital released plaintiff within two hours after she received an albuterol treatment (T. 298-99). On October 1, 1993, the hospital released plaintiff within two hours after she received 2.5 m.g. of albuterol (T. 295). On February 21, 1994, the hospital released plaintiff within two hours after she received .25 cc. of proventil (T. 353-54). Finally, on March 11, 1994, the hospital released plaintiff, who showed no clinical signs of asthma, within an hour (T. 360-61). Therefore, because plaintiff could have received "intensive treatment" during only four of her eleven hospital visits, plaintiff necessarily did not suffer six "asthma attacks," as defined by section 3.00C, during the twelve-month period.
 
 
 17
 The parties contest whether plaintiff's attacks occurred "in spite of prescribed treatment;" arguably, three did not. The parties also contest whether her attacks all lasted at least one day, the record indicates that many did not, even when the length of an attack includes the time elapsed before plaintiff entered the hospital or emergency room. Even if all of plaintiff's attacks lasted for at least one day and occurred in spite of prescribed treatment, however, plaintiff did not suffer from six attacks requiring "intensive treatment." On this basis alone, plaintiff cannot satisfy the legal definition of "disabled" at step three.
 
 
 18
 (Dist.Ct. opn. dated July 6, 1995, pp. 5-7 (footnotes omitted).
 
 III.
 
 19
 Substantial Evidence Supports the ALJ's Decision that the Claimant Did Not Have an Impairment of Comparable Severity to an Impairment that Would Prevent an Adult from Engaging in Substantial Gainful Activities.
 
 
 20
 Although we have concluded, as did the ALJ, that Tameka did not have an impairment meeting or equaling a listed impairment, she nonetheless could be found disabled at step four of the sequential analysis if she were found to have an impairment of "comparable severity" to an impairment that would disable an adult. The regulations of the Social Security Administration require that there be an individualized assessment of the functioning of any child claimant whose impairment does not meet or medically equal a Listing to determine whether the child's impairment or combination of impairments is of comparable severity to an impairment that would disable an adult. See 20 C.F.R. §§ 416.924(a), 416.924d (1995). In order to qualify, the impairment or combination of impairments must substantially reduce a child's ability to (1) grow, develop, or mature physically, mentally, or emotionally, and thus attain developmental milestones at an age-appropriate rate; or (2) grow, develop, or mature physically, mentally or emotionally, and thus to engage in age-appropriate activities of daily living in self-care, play and recreation, school and academics, vocational settings, peer relationships, or family life; or (3) acquire the skills needed to assume roles reasonably expected of adults. Id. at § 416.924(a)(1)-(3). In order to make this determination, an individualized functional assessment (IFA) must be made of the claimant's functioning in six areas: (1) cognitive function, (2) communicative function, (3) motor function, (4) social function, (5) personal behavioral function, and (6) concentration, persistence and pace. Id.
 
 
 21
 The six areas to be evaluated are referred to as "domains" and the evaluation of each domain is done with reference to terminology used in the Listing of Impairments, including the relevant terms for purposes of this case, "marked" and "moderate."
 
 
 22
 The regulations further provide that a child of Tameka's age will be found to have an impairment of comparable severity to one that would disable an adult if an IFA shows that the child's function is "markedly" impaired in one domain and "moderately" impaired in another domain, or if the child's functioning is "moderately" impaired in three domains. The ALJ concluded that plaintiff suffered from a moderate limitation in her cognitive function, a less than moderate limitation in her communicative function, and no limitation in her other four functions, and, accordingly, found that plaintiff did not have an impairment of comparable severity to one which would disable an adult.
 
 
 23
 Although claimant argues that substantial evidence does not support the ALJ's conclusion, she supports this argument primarily by pointing to evidence that would support a contrary conclusion. Although there is evidence in the record from which a contrary conclusion might have been reached, we find ample supporting evidence for the conclusion reached by the ALJ. To the degree that in reaching his finding the ALJ rejected the conclusion of some of the consulting or examining physicians, he did so appropriately, because the ultimate IFA determination is to be made by the ALJ.
 
 
 24
 AFFIRMED.